IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TYRONE BONDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10-0603-CV-W-ODS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION REVERSING COMMISSIONER'S FINAL DECISION DENYING BENEFITS AND REMANDING FOR RECONSIDERATION

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying his application for disability and supplemental security income benefits. The Commissioner's decision is reversed and the case is remanded for reconsideration. The reasons for this decision, and the issues that must be considered on remand (along with any other issues the Commissioner deems appropriate to consider) are discussed below.

1. Plaintiff was born in May 1960, is 6'1" tall and weighs over 350 pounds. The ALJ noted Plaintiff is obese and, while there is no longer a listed impairment based solely on obesity, Plaintiff's height/weight combination would have satisfied that impairment. The ALJ then properly noted obesity is still an impairment that must be considered along with all other impairments. The ALJ then determined that obesity had no effect on Plaintiff's residual functional capacity, apparently because Plaintiff did not exhibit any of the other conditions that were required to meet the listing for obesity when such a listing existed. R. at 13-14.

There are two flaws in the ALJ's reasoning. First, there is no requirement that Plaintiff demonstrate any other conditions (e.g., pain in a weight-bearing joint or spine, hypertension marked by diastolic blood pressure above one hundred, congestive heart failure, severe respiratory ailment) before obesity may be considered in conjunction with a claimant's other severe impairments. Second, Plaintiff exhibited some of these

additional conditions. Plaintiff's diastolic blood pressure has been very near or over 100 for extended periods of time. In May 2006 Plaintiff was admitted to the hospital due to respiratory distress; his blood pressure was 116/98. R. at 191. Plaintiff was in jail from late June 2006 to early November 2006; he was kept on the first floor and his activity was limited on orders from the medical staff, yet medical records from the jail indicate Plaintiff's diastolic pressure was near or above 100. R. at 216, 222, 236, 239, 245. On January 11, 2007, Dr. Sarwath Bhattacharya noted Plaintiff's blood pressure was 179/106 despite being on medication. R. at 164-65.[1] Plaintiff's documented breathing problems (including sleep apnea) qualify as a respiratory ailment. Medical records also confirm a history of congestive heart failure.

The ALJ was not justified in ignoring Plaintiff's obesity. The Record establishes that Plaintiff's functional abilities are limited by his obesity. On remand, the Commissioner must ascertain those limitations and apply them at steps four and five of the five-step sequential process. If any of those limitations are non-exertional, then testimony from a vocational expert must be elicited.

2. Plaintiff was diagnosed with severe obstructive sleep apnea in January 2000. In October 2007 Plaintiff sought treatment from the Sleep Center at Washington University Medical Center. The ALJ issued his decision in late March 2008 – before Plaintiff's apnea was stabilized. In late April – before the Appeals Council affirmed the ALJ's decision – Dr. Grant Warmouth noted that despite "excellent" compliance with medical instructions, Plaintiff continued to experience "excessive daytime sleepiness." R. at 377. In addition to recommending continued testing and treatment, Dr. Warmouth recommended that Plaintiff not drive. R. at 378-79. Following those tests, in May 2008 Dr. Warmouth diagnosed Plaintiff as suffering from narcolepsy. R. at 382-83. He also

---

[1]Plaintiff's blood pressure on October 10, 2007, was 124/66. This does not affect the Court's analysis because (1) Plaintiff's diastolic pressure exceeded one hundred for extended periods of time covered by Plaintiff's applications and (2) obesity, alone, may have an impact on a claimant's functional abilities regardless of blood pressure or other weight-related conditions that were required when obesity was a free-standing, listed impairment.

wrote a letter documenting Plaintiff's treatment and concluding that Plaintiff "should certainly not be driving or working." R. at 386-87.

The ALJ hardly mentioned Plaintiff's sleep apnea in evaluating his functional capacity. The Commissioner now points out that some of the evidence was developed after the ALJ issued his decision, but it was presented to the Appeals Council and hence must be considered part of the Record. Moreover, Dr. Warmouth's reports do not relate to a new or deteriorating condition, but rather reflect on Plaintiff's condition at the time of the ALJ's decision. On remand, the Commissioner must consider the records from Washington University and specifically the reports from Dr. Warmouth, along with any other records and reports (from Dr. Warmouth or otherwise) regarding Plaintiff's sleep disorder/narcolepsy/breathing difficulties.

3.  The ALJ found Plaintiff could return to his past work as a client driver for a treatment facility. The ALJ also found that even if Plaintiff could no longer engage in commercial driving due to his sleep apnea Plaintiff could still perform "a wide range of other light jobs in the local, state and national economies." The ALJ did not identify these "other" jobs.

Substantial evidence in the Record suggests Plaintiff could not drive. In addition to the aforementioned reports from Dr. Warmouth, Plaintiff was previously advised by a nurse practitioner (Nurse Lawanda Trotter) that he should not drive. The ALJ discounted Nurse Trotter's opinion, essentially because she was a nurse and not a doctor. While Nurse Trotter could not be considered a treating doctor to whom deference is owed, she is still a medical practitioner and her opinion is entitled to some weight. Given the absence of contrary evidence and the confirming evidence from Dr. Warmouth, the ALJ's conclusion that Plaintiff could perform a job in commercial driving is not supported by substantial evidence.

The ALJ's alternative holding – that Plaintiff can work even if he cannot drive – is also insufficient. The ALJ specified no particular jobs that could be performed. Moreover, the only reason to consider this alternative holding is because Plaintiff suffers from a non-exertional impairment that precludes him from driving – but the ALJ did not elicit testimony from a vocational expert. Absent testimony from a vocational expert,

there is no basis for concluding Plaintiff is capable of working in spite of his nonexertional impairment.

IT IS SO ORDERED.


DATE: February 3, 2011

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT